WILLIAM STEWART *v.* SARAH PICKARD and others.

The price of a slave who belonged to the husband before the marriage, but was sold by him during its existence, cannot be charged to the community, without proof that the price was employed for its benefit.

A partition having been ordered by the Probate Court, of the effects of the community previously existing between the plaintiff and his deceased wife, the former opposed its homologation, claiming to be allowed, as a charge against the community, the price of a slave sold by the father of certain minor heirs of the wife, more than ten years before, under a power of attorney from him, and which price he alleged had never been accounted for. *Per Curiam :* If the value of the slave was intended to be left as a donation in the hands of the person by whom it was sold, the donor cannot revoke it in this way; if as a loan, the action to recover it is prescribed.

The community of *acquêts* ceases to exist by the death of either spouse. A title to an undivided half of the property vests in the survivor and the heirs of the deceased; and if the former continue in the enjoyment of the common property, he will be bound by the obligations of a *negotiorum gestor.*

A Court of Probates has no jurisdiction of any matters in litigation between the surviving spouse and the heirs of the deceased, arising subsequently to the dissolution of the community—particularly of such as may result from the obligations of one of the parties as a *negotiorum gestor.*

APPEAL from the Court of Probates of East Feliciana, *Saunders,* J.

BULLARD, J. This case was before us in March, 1842. See 1 Robinson, 415.

In the further progress of the partition, the plaintiff claimed an allowance for the value of two slaves brought by him into the community, and sold by him during its existence ; and further, that the heirs of W. W. Stewart should be charged with $500, as the price of a slave, named Prince, belonging to the community, and sold by him, and for which he never accounted.

The heirs of the wife, on the other hand, present a claim against the plaintiff for the use of the land, for the years 1838 and 1839 ; for the use of their undivided half of the land since, for two years and four months ; for the hire of eleven slaves, during five years, from 1838 to 1842, inclusive ; for the use of the horses and farming utensils for the years 1838 and 1839 ; and for 25 bales of cotton on hand when the inventory was

taken, which the plaintiff made use of; the whole amounting to $9230.

The Court of Probates rejected these claims on both sides, being of opinion that the community is not chargeable with the price of the two slaves, without proof that it was employed for the benefit of the community; that the claim against W. W. Stewart, was barred by prescription; and that the claims set up by the heirs were against the plaintiff as an individual, and not as a partner in the community, and could only be enforced in a court of ordinary jurisdiction. The correctness of this judgment is the question to be decided on this appeal.

We concur with the Court of Probates in the opinion, that the value of the two slaves sold by the plaintiff during the marriage, and which had belonged to him before, does not form a charge upon the community, without evidence that it was employed for the benefit of the community.

It is shown that a power of attorney was given in 1827, by W. Stewart to W. W. Stewart, to sell the slave Prince, the price of whom is now claimed of his representatives. If the value of the slave was intended to be left in the hands of W. W. Stewart as a donation, the donor cannot revoke it in this way, and its collation could only be claimed by the co-heirs of the donee. If it was intended as a loan, the action to recover it back was prescribed.

Nor did the court err, in our opinion, in refusing to enquire into the claim growing out of the rent of land, or the hire of slaves and stock, since the dissolution of the community, and in deciding that such claim, if any existed, could only be enforced in a court of ordinary jurisdiction. In the case of *Broussard* v. *Bernard et al.*, 7 La., 216, we held that the community ceased to exist at the death of one of the spouses, and the title to one undivided half of the property became vested in each of the parties, and that if the survivor continued in the enjoyment of the common property, he was bound by the obligations of a *negotiorum gestor*, unless he had some legal usufruct. That case was from the District Court, and the enquiry was gone into as to the revenues derived from the property after the dissolution of the community. The point now made, was considered by us in the

case of *Babin* v. *Nolan*, 6 Robinson, 508, in which we held that the Court of Probates was without jurisdiction to try matters in litigation between the parties which may have arisen subsequently to the dissolution of the community, and particularly which may result from the obligations of one of the parties as a *negotiorum gestor.*

It is, therefore, adjudged and decreed, that the judgment of the Court of Probates be affirmed; and as both parties have appealed, it is further ordered that each pay one-half of the costs of the appeal.

*Merrick,* for the plaintiff.

*Winter,* contrâ.